## OUTTEN & GOLDEN LLP

*Advocates for Workplace Fairness*

May 13, 2015

**By ECF**
The Honorable Esther Salas
United States District Judge
District of New Jersey
Martin Luther King, Jr. U.S. Courthouse and Federal Building
50 Walnut Street, Room 4015
Newark, NJ 07101

**Re:** ***Guess?, Inc. v. Russell, et al.,* No. 14 Civ. 5664 (ES) (MAH)**

Dear Judge Salas:

We represent Defendants Marisol Russell and Melissa Porcello in the above-referenced matter. We write in response to Plaintiff Guess?, Inc.'s letter of today's date, ECF No. 28.

The cases Plaintiff submitted have limited bearing on Defendants' motion to dismiss. Two other decisions issued since briefing hold – counter to the *Chesapeake Appalachia* cases – that adoption of the American Arbitration Association ("AAA") Rules constitutes clear and unmistakable evidence that the parties delegated the issue of class arbitrability to the arbitrator. *Marriott Ownership Resorts, Inc. v. Flynn,* No. 14 Civ. 00372, 2014 WL 7076827, at *13 (D. Hawai'i Dec. 11, 2014); *Universal Prot. Serv., L.P. v. Superior Court of San Diego Cnty.*, 234 Cal. App. 4th 1128, 1142 n.5, 184 Cal. Rptr. 3d 382, 393 n.5 (2015), *as modified* (Mar. 12, 2015), *review filed* (Apr. 2, 2015) (copies of these decisions are enclosed for the Court's convenience). In addition, two of the cases Plaintiff cited in its letter, *Torres v. CleanNet, U.S.A., Inc.*, No. 14 Civ. 2818, 2015 WL 500163, at *10 (E.D. Pa. Feb. 5, 2015), and *Eshagh v. Terminix Int'l Co., L.P.*, No. 11 Civ. 0222, 2012 WL 1669416, at *10 (E.D. Cal. May 11, 2012), *aff'd,* 588 Fed. Appx. 703 (2014), do not analyze the issue of whether adoption of the AAA Rules delegates the class arbitrability issue to the arbitrator.

Since briefing the motion to dismiss, there have been significant developments in the arbitration proceeding in this case in the AAA. The AAA set the forum in Los Angeles, California; the parties selected an arbitrator; and the arbitrator set a schedule for briefing class arbitrability, with Claimant's brief due on May 15, 2015. Although Guess? has continued to object to the arbitrator's power to decide arbitrability, it has never filed a motion to stay the arbitration proceedings in any judicial forum.

We thank the Court for its attention to this matter.

Respectfully submitted,



Olivia J. Quinto

cc: All counsel (by ECF)

3 Park Avenue, 29th Floor, New York, NY 10016  Tel 212-245-1000  Fax 646-509-2060
161 N. Clark Street, Suite 4700, Chicago, IL 60601  312-809-7010  Fax 312-809-7011
One Embarcadero Center, 38th Floor, San Francisco, CA 94111  Tel 415-638-8800  Fax 415-638-8810
og@outtengolden.com   www.outtengolden.com

2014 WL 7076827
Only the Westlaw citation is currently available.
United States District Court,
D. Hawai'i.

MARRIOTT OWNERSHIP RESORTS, INC.;
Marriott Vacations Worldwide Corporation;
Marriott Resorts, Travel Company, Inc.; and
Marriott Resorts Hospitality Corporation, Plaintiffs,
v.
Michael Kevin FLYNN and
Marla Kay Flynn, Defendants.

Civil No. 14–00372 JMS–
RLP.   |   Signed Dec. 11, 2014.

**Attorneys and Law Firms**

Ian S. Marx, Louis Smith, Philip R. Sellinger, Greenberg
Traurig, LLP, Florham Park, NJ, Joseph A. Stewart, Lex
R. Smith, Maria Cecilia Wang, Kobayashi Sugita & Goda,
Honolulu, HI, for Plaintiff.

Joseph M. Matthews, Latoya C. Brown, Colson Hicks Eidson,
Coral Gables, FL, Michael K. Livingston, Davis Levin
Livingston, Honolulu, HI, Seth Rubinson, Zabel Freeman,
Houston, TX, for Defendant.

---

*ORDER (1) GRANTING IN PART AND DENYING
IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, FOR
PRELIMINARY INJUNCTION, DOC. NO. 6; AND
(2) GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY ACTION, DOC. NO. 10*

J. MICHAEL SEABRIGHT, District Judge.

### I. INTRODUCTION

**\*1** Between 2004 and 2013, Defendants Michael Kevin
Flynn and Marla Kay Flynn ("Defendants" or "the Flynns")
purchased from Plaintiff Marriott Ownership Resorts, Inc.
("MORI") multiple weekly timeshare interests in two Hawaii
resorts, Marriott's Maui Ocean Club in Lahaina, Maui ("Maui
Ocean Club"), and Marriott's Ko Olina Beach Club in
Kapolei, Oahu ("Ko Olina Club"). In June 2010, MORI made

changes to the timeshare program. The Flynns, individually
and on behalf of a potential class, claim that these changes
breached the timeshare agreements and violated state law.
The changes allegedly made it more difficult to use their
interests and diminished their value. The Flynns submitted an
August 6, 2014 Arbitration Demand ("Arbitration Demand")
of their claims based on arbitration provisions in the timeshare
documents.

MORI and its affiliates co-Plaintiffs Marriott Vacations
Worldwide Corporation; Marriott Resorts, Travel Company,
Inc.; and Marriott Resorts Hospitality Corporation
(collectively, "Plaintiffs" or "Marriott"), contend that the
Flynns' claims are not subject to mandatory arbitration.
Marriott brought this action for declaratory and injunctive
relief, seeking a ruling that the dispute is not subject to
arbitration and/or an order enjoining the Flynns' Arbitration
Demand.

Currently before the court are (1) Plaintiffs' Motion for
Summary Judgment or, in the Alternative, for Preliminary
Injunction, Doc. No. 6; and (2) Defendants' Motion to Compel
Arbitration, Doc. No. 10. Based on the following, the court
GRANTS in part and DENIES in part Plaintiffs' Motion and
GRANTS in part and DENIES in part Defendants' Motion.
At the threshold, an arbitrator must determine whether the
primary dispute is subject to mandatory arbitration, and
whether class arbitration is allowed. Some aspects of the
Arbitration Demand, however, are clearly not arbitrable.

### II. BACKGROUND

**A. Factual Background**
Between 2004 and 2007, the Flynns purchased four separate
"weeks ownership" timeshare interests in two- and three-
bedroom units at the Ko Olina Club and the Maui Ocean
Club. Doc. No. 7, Pls.' CSF ¶ 1. In 2013, the Flynns
purchased an additional weeks ownership timeshare interest
at the Ko Olina Club. Under the purchase agreements, the
Flynns' weeks ownership interests entitle them to reserve
and use their weeks at the Maui Ocean and Ko Olina
Clubs during the respective "use year" associated with each
ownership interest. *See* Doc. No. 1, Compl., Pls.' Exs. A—D,
Purchase Agreements; and Pls.' Exs. F & G, Maui Ocean Club
Vacation Ownership Program Declaration of Covenants,
Conditions and Restrictions, and Ko Olina Beach Club
Vacation Ownership Program Declaration of Covenants,

Conditions and Restrictions (collectively, the "Timeshare Agreements"), Ch. 1 ¶ E.2, Ch. 3 ¶ 3.7. [1]

In June 2010, MORI (and/or other of the Plaintiff Marriott affiliates) created a "points-based" timeshare model. This new model encompasses numerous Marriott Vacation Club resorts and an exchange program through which both new owners of beneficial interest points through the new model and existing weeks use owners—who opt to exchange their use weeks for an allotment of points—use those points to book vacations. The Flynns opted not to exchange their use weeks for points (*i.e.,* not to enroll in the new program). They contend that the creation of this new points-based model caused them increased difficulty in exercising their use weeks rights at the Maui Ocean and Ko Olina Clubs, and has resulted in substantial devaluation of their timeshare interests.

**\*2** In their August 6, 2014 Arbitration Demand, the Flynns allege that, prior to 2010, MORI owned tens of thousands of unsold timeshare interests in various timeshare resorts, for which it was obligated to pay a share of the maintenance costs. Marriott transferred this unsold inventory to a Florida land trust (the "MVC Trust") and began selling timeshare interests from this trust. The Flynns contend that MORI established the points-based timeshare model in order to sell these less desirable interests, and to avoid certain financial obligations and additional costs related to development of current and new properties. The Arbitration Demand alleges that the Flynns, and other similarly-situated weeks owners, have difficulty reserving their weeks at their home resorts because they now compete with owners in the new programs, who receive preferential treatment and superior reservation and use rights. Doc. No. 1, Compl. Ex. E ¶¶ 42, 49, 53–56. Marriott has "exponentially increas[ed] [the] number of" timeshare owners who may reserve nights, such that the number of owners "exceed[s] the number of nights available for use by those owners [.]" *Id.* ¶ 102. In short, "Marriott has substantially diminished the value" of weeks owner's interests. *Id.* ¶ 60. They claim MORI has violated a Hawaii state law that prohibits timeshare companies from selling more weeks or nights than are available in a timeshare plan. *Id.* ¶¶ 52, 100–102.

The Flynns make such allegations on behalf of a proposed class, defined as "all natural persons who purchased and now own weeks ownership interest(s) in the Marriott Hawaii Resorts; that is Maui Ocean Club, Ko Olina Beach Club, Kauai Beach Club, Kauai Lagoons—Kalanipuu, and Waiohai Beach Club." *Id.* ¶ 62. That is, the Flynns seek

to represent weeks owners for three *other* Hawaii-resort Marriott timeshare projects, besides the Maui Ocean Club and Ko Olina Beach Club.

**B. The Arbitration Demand's Five Counts and Relief Sought**

The Arbitration Demand alleges five Counts, set forth in detail below:

*1. Count I—Breach of the Hawaii Timeshare Agreements*

This Count asserts, in part, that "in return for consideration paid" in the form of payment for weeks ownership interests, fees, and taxes, MORI:

> promised to provide timeshare interests in the form of weeks ownership, as well as to provide the services necessary in order for [Defendants] ... to exercise and receive the full benefit of their use rights, such as reservation and exchange services and general operational services by [Plaintiffs].

Doc. No. 1, Compl. Ex. E ¶ 74. It further alleges that MORI "promised to convey its interests in the ... Resorts and to terminate its financial obligations as an owner in a manner consistent with the Hawaii Timeshare Agreements." *Id.* ¶ 75. Nevertheless:

> [b]y introducing the new point-based timeshare model, [MORI] failed to perform and breached the timeshare agreements by: (1) materially and adversely affecting the Class members' use rights in their weeks ownership interests, (2) no longer operating the weeks ownership timeshare model as the Class members bargained for, (3) not effectively operating the services necessary to ensure that the Class members are able to utilize their weeks ownership interests, and (4) diluting the use and value of the Class members' interests by providing more advantages to Points–Based Owners, utilizing an arbitrary points value system,

and actively undermining weeks ownership interests in advertisements.

**\*3** *Id.* ¶ 77. Further, although the Timeshare Agreements "specifically enumerate those rights reserved by MORI as developer" including "the right for MORI to convey its interests to the associations," *id.* ¶¶ 78a-b, "rather than exercising its right ... MORI conveyed its ... ownership interests to the MVC Trust in bulk (thus creating an entirely new class of owners that competes with Weeks Owners and leading to the diminution in value of weeks ownership interests) [thereby] breach[ing] the Hawaii Timeshare Agreements." *Id.* ¶¶ 78c-d.

### 2. Count II—Breach of the Implied Covenant of Good Faith and Fair Dealing

The Flynns assert that Marriott "rendered imperfect performance and unfairly interfered with the Class members' rights to receive the benefits of the contract, that is, their rights to the full use and enjoyment of their weeks ownership intersts." *Id.* § 86. As a result, and "as fully illustrated" in the Arbitration Demand, Marriott "breached the implied covenant of good faith and fair dealing." *Id.* ¶ 82.

### 3. Count III—Violation of Hawaii Consumer Protection Statutes

The Flynns assert that Marriott violated Hawaii Revised Statutes ("HRS") §§ 481–1, 480–24, and 481A–1, *et seq.* *Id.* § 89. More specifically, they assert that Marriott engaged in conduct constituting unlawful business practices and acts and deceptive trade practices by (1) "violat[ing] HRS Chapter 514E['s] ... one-to-one use-right to use-night requirement," (2) preventing Class members from "receiving the benefits they bargained for" and "tak[ing] full advantage of their ownership interests," (3) "misle[ading] the Class members with regards to the product, services, and/or property they were to receive upon purchase of their weeks ownership timeshare interests," (4) misrepresenting the "characteristics, uses, ... benefits[,] ... standard, quality, or grade" of "advertised services" while "inten[ding] not to supply reasonably expectable public demand," and (5) fraudulently concealing "[m]aterial facts ... by [such] inaccurate representations" that were "likely to deceive reasonable consumers." *Id.* §§ 92, 94–95.

### 4. Count IV—Violation of Hawaii Timeshare Statute, HRS § 514E–1, et seq.

The Flynns assert that Marriott violated a statutory requirement that it not "offer or dispose of timeshare units or ... interests ... unless the one-to-one use-right to use-night requirement is satisfied *and continues to be satisfied for the duration of the Hawaii timeshare plans.*" *Id.* § 100 (emphasis in original). [2] They assert that by "implement[ing] the new timeshare model [,] ... the sum of nights which owners are entitled to use in a given year has exceeded the number of nights available for use by those owners during that year." *Id.* § 101.

### 5. Count V—Unfair and Deceptive Practices in Violation of Chapters 480 and 514E

**\*4** The Flynns assert that Marriott violated state law by misrepresenting (1) "the amount of time or period of time the timeshare units ... will be available to any purchaser," (2) "the size, nature, [and] extent ... of the timeshare units ... [and] of services incident to the timeshare unit," and (3) "failing to honor and comply with all provisions of the contracts or reservation agreements with purchasers." *Id.* § 106. Count Five asserts that these "unfair and deceptive practices" under the Hawaii Time Sharing Plans Act constitute a violation of HRS ch. 480 (regarding unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce). *Id.*

### 6. The Relief Sought in the Arbitration Demand

Given these five Counts, the Arbitration Demand seeks the following primary relief:

- "An order certifying this action to proceed as a class action and appointing the Flynns and their counsel to represent the Class;"

- "a declaratory award determining that creation of the MVC Trust, transfer of Marriott's inventory of unsold weeks in the Marriott Hawaii Timeshare Resorts, and creation of the Destination Program and Exchange Program constituted breaches of the Hawaii Timeshare Agreements;"

- "a declaratory award determining that creation of the MVC Trust, transfer of Marriott's inventory of unsold weeks in the Marriott Hawaii Timeshare Resorts, and creation of the Destinations Program and Exchange Program constituted a violation of the Hawaii Time Sharing Plans Act—especially the statute's one-to-one use-right to use-night requirement;"

• an award of damages in an amount equal to the loss of value of the Claimants' and members of the Class' weeks ownership interests in the market place, or alternatively in an amount equal to the cost of [beneficial interests] sufficient to equal the use rights they enjoyed prior to the creation of the MVC Trust, the Destinations Program and the Exchange Program[.]"

*Id.* at 29–30.

## C. Arbitration Provisions

The timeshare agreement for each timeshare resort property consists of a lengthy "Declaration of Covenants, Conditions and Restrictions." For example, the timeshare agreement for the Maui Ocean Club consists of fifteen chapters, establishing parameters such as (1) the nature of the project, (2) the ownership interests and reservation and use rights, (3) the timeshare association and management of the program, (4) exchange programs, (5) use provisions, (6) transfer of ownership interests, (7) finances, (8) responsibility for tenants and visitors, (9) default, (10) insurances, (11) maintenance and repair, (12) annexation, amendment, and termination of the program, and (13) developer's obligations. Doc. No. 7–4, Pls.' Ex. A at 3–11.

Contained within Chapter 14 (regarding "Developer's Obligations") of the Maui Ocean Club timeshare agreement is the following arbitration provision, which the Flynns invoked in their Arbitration Demand:

> **\*5** Any disagreement or controversy between the Developer and the Association with respect to the question of the fulfillment of the Developer's obligations [ (a) ] to complete and pay for any Improvement included in the Program,[ [3] ] [ (b) ] to pay for Basic or Special Charges as the Owner of the Developer Ownership Interests in the Program or [ (c) ] to pay the costs of operating the Program and maintaining it under a Subsidy Agreement shall, at the request of either party, be submitted to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association....

> Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other respects of the dispute shall be interpreted in accordance with, and the arbitrator shall apply and be bound to follow, the substantive laws of the State of Hawaii.

Doc. No. 1, Compl. Ex. F ¶ 14.1. This same clause is located in § 15.1 of the Ko Olina timeshare agreement. *Id.* Ex. G ¶ 15.1.[4] The timeshare agreements also provide that "[e]ach owner is automatically a member of the Association," Doc. No. 1, Compl. Exs. F & G ¶ 4.2, and that "any Member shall have the right to pursue or defend any" "lawsuit, arbitration or other legal proceedings relating to the Program or Resort" "on his own behalf, or on behalf of ... any other Member, if the law generally grants to the Member this right or if such Member is directly affected." *Id.* ¶ 4.7.[5]

## D. Procedural Background

On August 21, 2014, Marriott filed its Complaint seeking a declaratory judgment that it has no obligation to arbitrate the parties' dispute, and to enjoin the Flynns' August 6, 2014 Arbitration Demand.

On September 17, 2014, Marriott filed its Motion for Summary Judgment or, in the Alternative, for Preliminary Injunction. Doc. No. 6. On September 18, 2014, the Flynns filed their Motion to Compel Arbitration and Stay Action. Doc. No. 10. Oppositions to the Motions were filed on October 10, 2014. Doc. Nos. 23, 24. Corresponding Replies were filed on October 20 and 21, 2014. Doc. Nos. 29, 30. A hearing was held on November 3, 2014. Following the hearing, Marriott filed a supplemental brief on November 7, 2014, Doc. No. 37–2, to which the Flynns responded on November 24, 2014. Doc. No. 42.

## III. *STANDARDS OF REVIEW*

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* which applies to arbitration agreements in contracts involving transactions in interstate commerce, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

or equity for the revocation of any contract." 9 U.S.C. § 2; *see also* *Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1126 (9th Cir.2013) ("With limited exceptions, the [FAA] governs the enforceability of arbitration agreements in contracts involving interstate commerce."). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Nevertheless, "the federal policy in favor of arbitration does not extend to deciding questions of arbitrability," that is, the question "who decides whether a claim is arbitrable." *Oracle Am., Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1072 (9th Cir.2013) (emphasis omitted).

**\*6** In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir.2004) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000)); *see also* *Momot v. Mastro,* 652 F.3d 982, 986 (9th Cir.2011) ("Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.") (quotation marks and citations omitted).

**B. Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* *Broussard v. Univ. of Cal. at Berkeley,* 192 F.3d 1252, 1258 (9th Cir.1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d

978, 984 (9th Cir.2007) (citing *Celotex,* 477 U.S. at 323); *see also* *Jespersen v. Harrah's Operating Co.,* 392 F.3d 1076, 1079 (9th Cir.2004). "When the moving party has carried its burden under Rule 56[ (a) ] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation and internal quotation signals omitted); *see also* *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza,* 545 F.3d 702, 707 (9th Cir.2008) (citing *Anderson,* 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587; *see also* *Posey v. Lake Pend Oreille Sch. Dist. No. 84,* 546 F.3d 1121, 1126 (9th Cir.2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. *ANALYSIS*

**\*7** Marriott's Motion primarily seeks a declaration that the Flynns' claims as set forth in their Arbitration Demand are not arbitrable, and a corresponding Order enjoining further arbitration. The Flynns' Motion essentially seeks the opposite. Both Motions raise the same question—whether Marriott is obligated to arbitrate claims made in the Arbitration Demand. The answer turns on whether the Arbitration Demand falls within the identified arbitration clauses in the Maui Ocean Club and Ko Olina Timeshare Agreements. The court, however, must first address an important threshold question—whether an arbitrator or the court must make those determinations.

## A. The Arbitrator Determines Whether the Flynns' Claims in their Arbitration Demand Must Be Arbitrated

In general, "gateway questions of arbitrability, such as whether the parties have a valid arbitration agreement or

are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy," are issues for the court and not the arbitrator to decide. *Momot,* 652 F.3d at 987 (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). This rule flows from "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Id.* (quoting *First Options of Chic., Inc. v. Kaplan,* 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). As a result, in the normal course, the court determines the issue of arbitrability by applying "ordinary state-law principles that govern the formation of contracts." *First Options,* 514 U.S. at 944.

But parties may agree to arbitrate the question of arbitrability. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.* at 943 (internal citations omitted). Given the presumption that arbitrability is an issue for the court, however, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "Such '[c]lear and unmistakable "evidence" of agreement to arbitrate arbitrability might include ... a course of conduct demonstrating assent ... or ... an express agreement to do so.' " *Momot,* 652 F.3d at 988 (quoting *Rent–A–Center W., Inc. v. Jackson,* 561 U.S. 63, 79–80, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (Stevens, J., dissenting) (citing *First Options,* 514 U.S. at 946)).

Applying these principles, there is no evidence of a course of conduct suggesting an agreement to arbitrate—Marriott has objected to arbitration at every opportunity. Instead, the Flynns argue that the parties agreed that the issue of arbitrability should be determined by an arbitrator because the Maui Ocean Club and Ko Olina arbitration provisions provide that disputes between "the Developer and the Association" [6] "shall ... be submitted to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association [ ("AAA") ]." Doc. No. 1, Compl. Exs. F ¶ 14 & G ¶ 15.1. In turn, Rule 7(a) of the AAA Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of

the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* AAA Commercial Arbitration Rules (available at http:// www.adr.org). The court agrees.

**\*8** "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc.,* 724 F.3d at 1074. *See, e.g., Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 687 F.3d 671, 675 (5th Cir.2012) ("The express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.,* 592 F.3d 329, 345 (2d Cir.2010) (holding that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Fallo v. High–Tech Inst.,* 559 F.3d 874, 878 (8th Cir.2009) (determining that AAA Commercial Rule 7(a) gave the arbitrator the power to determine arbitrability); *Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1373 (Fed.Cir.2006) (similar); *Terminix Int'l Co. v. Palmer Ranch LP,* 432 F.3d 1327, 1332 (11th Cir.2005) (similar); *But see Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 777 & n. 1, 780 (10th Cir.1998) (determining that despite incorporation of AAA commercial rules into manufacturing agreement, subsequent settlement agreement created ambiguity regarding the parties' intent to delegate to arbitrator issue of arbitrability).

Here, the arbitration clauses at issue (agreements for Maui Ocean Club and Ko Olina) unambiguously incorporate the commercial arbitration rules of AAA. Applying binding authority, it is thus established (clearly and unmistakably) that the parties to the Timeshare Agreements intended to delegate the question of arbitrability to an arbitrator. *See, e.g., Oracle Am., Inc.,* 724 F.3d at 1074–75.

But Marriott argues that the sentence immediately following the provision incorporating the commercial arbitration rules of AAA creates an ambiguity. That language states:

> Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other respects of the dispute shall be interpreted in accordance with, and the arbitrator shall apply and be bound

to follow, the substantive laws of the State of Hawaii.

Doc. No. 1, Compl., Pls.' Exs. F ¶ 14.1 & G ¶ 15.1. [7] Marriott contends that this language specifically chooses federal law to decide how arbitrability is determined, construing it to mean that the parties chose the default rule under federal law that courts are to determine arbitrability. But Marriott's argument is circular. Incorporating federal law means not only that courts generally are to decide questions of arbitrability, but also that the parties are free to agree to allow an arbitrator to decide those questions. That is, incorporating federal law means that if parties choose to submit disputes to arbitration "in accordance with the commercial arbitration rules of the American Arbitration Association," then they "clearly and unmistakably" agreed to arbitrate arbitrability. *Oracle Am., Inc.,* 724 F.3d at 1074–75.

**\*9** Indeed, the language at issue is obvious "boilerplate" in response to *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Among other matters, *Volt* interpreted a contractual provision requiring arbitration in accordance with AAA's rules, but with a choice of law provision selecting the "law of the place where the Project is located [California]." *Id.* at 470. *Volt* held that this choice of law meant that the parties had agreed not only to substantive California law, but also to be governed by California arbitration procedures (and not the FAA), even if the state law arbitration provisions differ from the FAA. *Id.* at 474–75.

> Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms ... we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.

*Id.* at 479 (internal citation omitted). *See Cape Flattery, Ltd. v. Titan Maritime, LLC,* 647 F.3d 914, 919 (9th Cir.2011)

("[B]ased on *Volt,* contracting parties have the power to agree to apply non-federal arbitrability law.").

Given *Volt,* inadvertently incorporating state-law arbitration provisions (when otherwise choosing state substantive law) "can be avoided by modifying the choice of law provision used in agreements containing arbitration clauses to make clear the parties' intent to be governed by the federal law of arbitration." John R. Ackermann, Jr., *Arbitrating Licensing Disputes: Putting the "Binding" in Binding Arbitration,* 15 Licensing Law & Business Report 133,137 (Mar.-Apr.1993). The precise sentence at issue—"Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other aspects of this Agreement shall be interpreted in accordance with, and the arbitrator shall apply and be bound to follow the substantive laws, of the State of ——"—is meant to "deal[ ] with the '*Volt* problem' by ensuring that questions of arbitrability are determined under the FAA and not state law." *Id.* at 143. *See also, e.g.,* Archis A. Parasharami & Kevin Ranlett, *Supreme Court Addresses* Volt's *Choice–of–Law Trap: Is the End of the Problem in Sight?,* 64 Dispute Resol. J. 22, 26 (May–July 2009) (instructing that, after *Volt,* "drafters should take care to specify precisely which procedures will govern the enforcement of arbitration agreements. A choice-of-law clause should not be read to select state arbitration procedures if the agreement explicitly provides that the interpretation and enforcement of the arbitration provision shall be governed by the FAA."); Joseph T. McLaughlin, *Alternate Dispute Resolution; Trial Evidence, Civil Practice, and Effective Litigation Techniques in the Federal Courts,* C774 ALI–ABA 355, 391–92 (Feb. 25, 1993) ("Thus *Volt* has an immediate impact on every existing and future arbitration agreement governed by U.S. law. From now on, if a party to a contract containing an arbitration agreement or a contractual choice of law provision wants to avoid possible delays in the courts, the contract should state explicitly that the parties intend to be bound by federal law applicable to arbitration and not by any state law which may be contrary.").

**\*10** In short, the sentence simply ensures that the FAA applies in determining arbitrability—whether addressed by a court or an arbitrator. It does not mean that the court must determine arbitrability. Marriott argues that Hawaii and federal arbitration law do not conflict, and thus there would be no need to include the clause for that purpose. *See* Doc. No. 37–2, Pls.' Supp. Mem. at 2 (citing *Howard Fields & Assocs. v. Grand Wailea Co.,* 848 F.Supp. 890, 895 (D.Haw.1993)). State law, however, can change. And

even if there is no evidence that Marriott included the sentence in the relevant timeshare agreements specifically to address any particular aspect of Hawaii arbitration law, the clause provides no basis to distinguish binding and persuasive precedent—*Oracle America, Inc.,* 724 F.3d at 1074–75, and similar opinions from other Circuits—holding that incorporating the commercial arbitration rules of AAA is clear and unmistakable evidence of an agreement that an arbitrator is to determine arbitrability.

**B. The Arbitrator Is to Determine Whether the Parties Agreed to Allow Class Arbitration**

Alternatively, Marriott asks the court to address *class action* arbitration separately. That is, although the court determines that an arbitrator is to determine arbitrability in general (as a matter of contractual interpretation), Marriott asserts that the court should nevertheless declare as a matter of law that the Timeshare Agreements' arbitration clauses do not include class-action arbitration, given the nature of such actions. *See, e.g., Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 685, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) ("[C]lass-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."); *AT & T Mobility LLC v. Concepcion,* ——— U.S. ———, 131 S.Ct. 1740, 1750, 1751–53, 179 L.Ed.2d 742 (2011) (reasoning that "changes brought about by the shift from bilateral arbitration to class-action arbitration are fundamental," and stating that "[a]rbitration is poorly suited to the higher stakes of class litigation" and that class arbitration "is not arbitration as envisioned by the FAA") (internal quotation marks and citations omitted).

The analysis begins by distinguishing between (1) "questions of arbitrability," which—as discussed above—are generally for a court to decide (unless there is "clear and unmistakable" evidence otherwise), and (2) "other kinds of general circumstances where parties would likely expect that an arbitrator would decide the gateway question." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). "Thus 'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (citation and internal quotation marks omitted). In other words,

> [Courts] decide whether the availability of classwide arbitration is a "question of arbitrability." If

yes, it is presumed that the issue is for judicial determination unless the parties clearly and unmistakably provide otherwise. If the availability of classwide arbitration is not a "question of arbitrability," it is presumptively for the arbitrator to resolve.

**\*11** *Opalinski v. Robert Half Int'l, Inc.,* 761 F.3d 326, 330 (3d Cir.2014) (citations and some quotation marks omitted), *petition for cert. filed* (U.S. Nov. 25, 2014) (No. 14–625). *See also, e.g., In re A2P SMS Antitrust Litig.,* 2014 WL 2445756, at \*5 (S.D.N.Y. May 29, 2014) (explaining similar two-step process).

*1. A Significant Split in Authority Exists as to Whether Class Arbitration Is a "Procedural" or "Substantive" Question*

The Supreme Court has not specifically resolved whether the arbitrability of a demand for class arbitration is a "question of arbitrability" (and thus presumptively a question for a court) or one of "procedure" (and thus a question left to an arbitrator). *See Oxford Health Plans LLC v. Sutter,* ——— U.S. ———, 133 S.Ct. 2064, 2068 n. 2, 186 L.Ed.2d 113 (2013) ("[T]his Court has not yet decided whether the availability of class arbitration is a question of arbitrability ."). But in *Green Tree Financial Corporation v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), a plurality concluded that the decision whether an arbitration agreement encompasses class arbitration "concerns contract interpretation and arbitration procedures," and thus "should be for the arbitrator, not the courts[.]" *Id.* at 453.

> The question here—whether the contracts forbid class arbitration—does not fall into this narrow exception [where courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter]. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties.... [T]he question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter.* Rather the relevant question here is what *kind of arbitration proceeding* the parties agreed to.

That question does not concern a state statute or judicial procedures. It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question.

*Id.* at 452–53 (internal citations omitted).

Many courts have since relied on *Bazzle* to conclude that the question is "procedural," and should be decided by an arbitrator. *See, e.g., A2P SMS Antitrust Litig., 2014 WL 2445756, at *10; Harrison v. Legal Helpers Debt Resolution, LLC, 2014 WL 4185814, at *4 (D.Minn. Aug.22, 2014); Kovachev v. Pizza Hut, Inc., 2013 WL 4401373, at *2 (N.D.Ill. Aug.15, 2013); Lee v. JPMorgan Chase & Co., 982 F.Supp.2d 1109, 1112 (C.D.Cal.2013); Hesse v. Sprint Spectrum L.P., 2012 WL 529419, at *2 (W.D.Wash. Feb.17, 2012); cf. Employers Ins. Co. of Wausau v. Century Indem. Co., 443 F.3d 573, 577 (7th Cir.2006)* ("We find based on *Howsam* that the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve."); *Fantastic Sams Franchise Corp. v. FSRO Ass'n, 683 F.3d 18, 25 (1st Cir.2012)* (holding that an arbitrator decides whether an agreement permits "associational arbitration" because the question is not a "question of arbitrability"). [8]

**\*12** Two Circuit courts have held otherwise, determining that whether class arbitration is available is indeed a "question of arbitrability" for a court (absent clear and unmistakable evidence otherwise). *See Opalinski, 761 F.3d at 332; Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 599 (6th Cir.2013).* These decisions rely primarily on reasoning in *Stolt–Nielsen* and *Concepcion* describing fundamental differences between bilateral arbitration and class arbitration. *See Opalinski, 761 F.3d at 334* ("[W]e read the Supreme Court [in *Stolt–Nielsen* and *Concepcion* ] as characterizing the permissibility of classwide arbitration not solely as a question of procedure or contract interpretation but as a substantive gateway dispute qualitatively separate from deciding an individual quarrel. Traditional individual arbitration and class arbitration are so distinct that a choice between the two goes ... to the very type of controversy to be resolved."); *Reed Elsevier, 734 F.3d at 598* ("[T]he Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one."). The parties, however, have not cited a Ninth Circuit opinion ruling one way or the other, and the court's research has not revealed such a decision.

Ultimately, however, this court need not decide which of these competing viewpoints to follow—even if the court assumes that this is a "question of arbitrability," the record establishes clearly and unmistakably that Marriott agreed that an arbitrator is to decide the question of class arbitration.

### 2. There Is Clear and Unmistakable Evidence of an Intent to Submit the Question of Class Arbitration to the Arbitrator

*Stolt–Nielsen* "declined to hold that an arbitration agreement must *expressly* state that the parties agree to class arbitration." *Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir.2011).* That is, "[t]he Court contemplated that an arbitration agreement may contain an implicit agreement to authorize class arbitration, but an 'implicit' agreement ... may not be 'inferred solely from the fact of the parties' agreement to arbitrate.' " *Id.* (quoting *Stolt–Nielson, 559 U.S. at 685* (brackets omitted)). *See also, e.g., Yahoo! Inc. v. Iversen, 836 F.Supp.2d 1007, 1011 (N.D.Cal.2011)* ("[T]he Supreme Court has never held that a class arbitration clause must explicitly mention that the parties agree to class arbitration in order for a decisionmaker to conclude that the parties *consented* to class arbitration.") (citation omitted). [9]

Here, as discussed above with arbitration in general, the relevant Timeshare Agreements provide that certain disputes "shall ... be submitted to arbitration in accordance with the commercial arbitration rules" of the AAA. Doc. No. 1, Compl., Exs. F ¶ 14 & G ¶ 15.1. In turn, Rule 7(a) of the AAA commercial arbitration rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.* And more particularly, an agreement to the AAA's commercial arbitration rules also includes an agreement to the AAA Supplementary Rules for Class Arbitration. These Supplementary Rules provide, in part:

> **\*13** These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or

purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

AAA Suppl. Rule 1(a). The Supplementary Rules further provide for "construction of the arbitration clause," as follows:

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.

AAA Suppl. Rule 3.

Many courts have held that "consent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules and, if a dispute that otherwise would be arbitrated under the AAA rules involves a purported class, then the proceeding is governed by both the AAA rules and the AAA Supplementary Rules for Class Arbitrations." *Chesapeake Appalachia, LLC v. Burkett,* 2014 WL 5312829, at *7 (M.D.Pa. Oct.17, 2014) (citing *Bergman v. Spruce Peak Realty, LLC,* 2011 WL 5523329, at *3 (D.Vt.Nov.14, 2011)) (relying upon the Supplementary Rules when referring class arbitration issue to the arbitrator, where parties agreed to "the Commercial Arbitration Rules of the AAA"); *S. Commc'ns Servs., Inc. v. Thomas,* 829 F.Supp.2d 1324, 1336–38 (N.D.Ga.2011) (holding that AAA Wireless Industry Arbitration Rules "incorporate the AAA Supplementary Rules for Class Arbitrations, which gave the arbitrator the power to decide whether the Arbitration Clause implicitly authorized class proceedings"); and *Yahoo! Inc.,*

836 F.Supp.2d at 1011–12 (holding that parties' agreement to AAA National Rules for the Resolution of Employment Disputes also constituted agreement to the Supplementary Rules)). *See, also, e.g., Price v. NCR Corp.,* 908 F.Supp.2d 935, 945 (N.D.Ill.2012) ("[T]he parties' agreement to proceed 'under the AAA's rules' incorporates the Supplementary Rules for Class Arbitrations."); *Reed v. Fla. Metro. Univ., Inc.,* 681 F.3d 630, 635 (5th Cir.2012) ("[C]onsent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules."), *abrogated in part on other grounds in Oxford Health Plans LLC v. Sutter,* ––– U.S. ––––, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013).

**\*14** And it follows that—as with arbitration in general as set forth in *Oracle America,* 724 F.3d at 1075, and similar cases discussed above—incorporation of the Supplementary Rules constitutes clear and unmistakable evidence of an intent to have an arbitrator address the question of class arbitrability. *Yahoo! Inc.,* 836 F.Supp.2d at 1011–12; *Price,* 908 F.Supp.2d at 945 ("By adopting AAA Supplementary Rule 3 in their Agreement, the parties agreed that an arbitrator, and not this Court, would determine whether the Agreement authorizes class arbitration."); *Reed,* 681 F.3d at 635–36 ("The parties' consent to the Supplementary Rules, therefore, constitutes a clear agreement to allow the arbitrator to decide whether the party's agreement provides for class arbitration.").

Marriott argues that it cannot have agreed to incorporate the Supplementary Rules because they were not promulgated until 2003—well after the relevant Timeshare Agreements were recorded in the Hawaii Bureau of Conveyances in 1999 and 2001. But the operative dates are when the Flynns purchased their interests in the Timeshare Agreements, which occurred in 2004, 2007 and 2013—*after* the Supplementary Rules were promulgated. It was at those times when they were subject to the Timeshare Agreements. It was at those times that Marriott and the Flynns entered into contractual relationships as to the Timeshare Agreements.

And, in any event, Rule One of the 1996 AAA Commercial Arbitration rules (as with the current rules) provided that "[t]hese rules *and any amendment of them* shall apply in the form obtaining *at the time the demand for arbitration or submission agreement is received* by the AAA." *See Hodge v. Top Rock Holdings, Inc.,* 2011 WL 1527010, at *5 (E.D.Mo. Apr.20, 2011) (quoting Rule One) (emphasis added); *Supply Basket, Inc. v. Global Equip. Co.,* 2014 WL 2515345, at *3 (N.D.Ga. June 4, 2014) (reviewing AAA rules in effect at time of execution of agreements in 1999, 2000, and 2006 and

determining that they all "include the following provision or some equivalent thereof: ... These rules *and any amendment thereof shall apply in the form obtaining when the arbitration is initiated* ").

Thus, even under Marriott's theory that the relevant time was the recording of the Timeshare Agreements (in 1999 and 2001), Marriott agreed at that time to be bound by the AAA rules, as amended, "in the form obtaining at the time the demand for arbitration ... is received." That is, it agreed to be bound by the rules in existence in 2014—which include the AAA Supplementary Rules pertaining to Class Arbitrations. *See Sleepy's LLC v. Escalate, Inc.,* 2010 WL 2505678, at *2 & n. 28 (S.D.N.Y. June 18, 2010) (applying 2009 AAA rules to 1998 agreement, based on Rule One); *Hodge,* 2011 WL 1527010, at *5 ("[B]y designating the AAA Rules in the arbitration clause, and not designating any alternate set of procedural rules or expressing any limitation on the applicability of Rule 1 which was in effect at the time of the execution of the Agreements, the parties contracted via a theory of incorporation that the current Rules of the AAA would govern arbitration matters at the time arbitration was demanded."); *JSC Surgutneftegaz v. President & Fellows of Harvard Coll.,* 167 F. App'x 266, 268 (2d Cir.2006) ("[Plaintiff's] argument that the 1996 version of the AAA's Commercial Rules does not contain such a clause [empowering an arbitrator to determine issues of arbitrability] is inapposite because Rule 1 of that version provides that the 'rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration or submission agreement is received by the AAA.' "); *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1273 (7th Cir.1976) (similar).

**\*15** Accordingly, given the AAA Supplementary Rules regarding Class Arbitrations, Marriott clearly and unmistakably agreed to have an arbitrator determine whether class arbitration is allowed. *See, e .g., Oracle Am.,* 724 F.3d at 1075; *Reed,* 681 F.3d at 635–36; *Yahoo! Inc.,* 836 F.Supp.2d at 1011–12; *Price,* 908 F.Supp.2d at 945.

**C. There Is No Basis for Arbitrating Claims as to the Kauai Beach Club Resort and Kauai Lagoons—Kalanipuu Resort**

Lastly, Marriott asks the court to declare that the Arbitration Demand may not proceed to the extent the Flynns seek to arbitrate claims as to the Kauai Beach Club Resort and Kauai

Lagoons—Kalanipuu Resort (timeshare regimes that are both defined by timeshare agreements that, as the Flynns now concede, do not contain arbitration clauses. The court agrees as to these claims only.

The court need not allow an arbitrator to make this decision because there is absolutely no basis for concluding (explicitly or implicitly) that Marriott agreed to allow an arbitrator to address it. The assertion that Marriott could have agreed to arbitrate claims based on an agreement that does not contain an arbitration clause—as the parties now agree based on information not available when the Arbitration Demand was submitted—is "wholly groundless." *See Douglas v. Regions Bank,* 757 F.3d 460, 464 (5th Cir.2014) (allowing a court to decide an arbitrability question that is "wholly groundless," despite a delegation provision). And the court makes this determination despite the possibility of inefficient separate proceedings occurring simultaneously in different forums (*i.e.,* one in court, and one in arbitration). *See KPMG LLP v. Cocchi,* ——— U.S. ———, 132 S.Ct. 23, 26, 181 L.Ed.2d 323 (2011) ("[W]hen a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.' ") (quoting *Dean Witter,* 470 U.S. at 217). To this limited extent, Marriott's Motion is GRANTED, and the Flynn's Motion is DENIED.

### V. *CONCLUSION*

The court GRANTS in part and DENIES in part Marriott's Motion for Summary Judgment, Doc. No. 6; and GRANTS in part and DENIES in part the Flynns' Motion to Compel Arbitration. Doc. No. 10. The arbitrator must make the initial determination whether the Flynns' Arbitration Demand (including the class allegations) falls within the scope of the identified arbitration provisions in the Timeshare Agreements for the Maui Ocean Club and Ko Olina Beach Club. The arbitration, however, may not proceed as to claims based on Kauai Beach Club Resort and Kauai Lagoons—Kalanipuu Resort. There being no other issues, the Clerk of Court shall close the case file.

IT IS SO ORDERED.

## Footnotes

1     The Maui Ocean Club Timeshare Agreement was recorded in the Hawaii Bureau of Conveyances on October 7, 1999. Doc. No. 1, Compl. Ex. F. The Ko Olina Beach Club Timeshare Agreement was recorded on September 24, 2001. *Id.* Ex. G.

2     HRS § 514E–8.6(a) provides: "A developer shall not offer or dispose of a time share unit or a time share interest unless the one-to-one-use-right to use-night requirement is currently satisfied and will continue to be satisfied for the duration of the time share plan." In turn, HRS § 514E–1 defines "[o]ne-to-one use-right to use-night requirement" as meaning "that the sum of the nights which owners are entitled to use in a given year shall not exceed the number of nights available for use by those owners during that year."

3     Pursuant to the Timeshare Agreements, MORI is the "Developer," the "Association" is comprised of all unit owners, and the "Program" is "the common scheme and plan" with regard to timeshare interests and units. Doc. No. 1, Compl., Exs. F & G, Timeshare Agreements at 2–3.

4     The timeshare agreements for the Kauai Beach Club and Kauai Lagoons—Kalanipuu do not contain arbitration provisions. Doc. No. 23, Pls.' Opp'n at 10 (referring to Doc. Nos. 7–6 & 7–7).

5     A different (additional) arbitration provision in the Ko Olina Beach Club Agreement (and, as represented by Defendants' counsel at the November 3, 2014 hearing, also in the Maui Beach Club Agreement) reads, in part, as follows:

> 13.14 ALTERNATIVE DISPUTE RESOLUTION. In the event of the occurrence of any controversy or claim arising out of, or related to this Declaration or to any alleged construction or design defects pertaining to the Improvements on the Property ("dispute"), ... the parties to the dispute agree to submit the dispute to mediation[.] ... If the dispute is not resolved through mediation, the dispute shall be resolved by arbitration pursuant to this paragraph and the then-current rules and supervision of the American Arbitration Association.

> Doc. No. 1, Pls.' Ex. G at 66. This provision was not invoked by the Flynns. Accordingly, this Order focuses on the arbitration clause or clauses that were invoked— § 14.1 of the Maui Ocean Club Agreement and § 15.1 of the Ko Olina Agreement.

6     The Timeshare Agreements authorize each timeshare owner the right to enforce the Arbitration Agreement and to represent other owners should the Program Operator not do so. Doc. No. 1, Compl. Exs. F & G ¶ 4.7 (providing that "any Member shall have the right to pursue or defend any [legal proceeding, including arbitration, relating to the Program or Resort] on his own behalf, or on behalf of the Association or any other Member, if ... such Member is directly affected").

7     So, the key language is:

> Any disagreement or controversy between the Developer and the Association with respect to the question of the fulfillment of the Developer's obligations ... shall, at the request of either party, be submitted to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. The arbitration shall be held in Honolulu, Hawaii. Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other respects of the dispute shall be interpreted in accordance with, and the arbitrator shall apply and be bound to follow, the substantive laws of the State of Hawaii.

8     "Associational arbitration" has been defined as "whether an association could represent its members in an arbitration proceeding ." *In re A2P SMS Antitrust Litig.,* 2014 WL 2445756, at *9.

9     Plausible contractual grounds exist for determining that the agreements contemplated class arbitration. Paragraph 4.7 of the relevant time share agreements provides that "any Member shall have the right to pursue or defend any" "lawsuit, arbitration or other legal proceedings relating to the Program or Resort" "on his own behalf, or on behalf of ... any other Member, if the law generally grants to the Member this right or if such Member is directly affected." Doc. No. 1, Compl. Exs. F & G ¶ 4.7. The meaning of this clause is a matter of contractual interpretation—a question for the arbitrator.

---

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Universal Protection Service, L.P. v. Superior Court of San..., 234 Cal.App.4th 1128...

184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

234 Cal.App.4th 1128
Court of Appeal,
Fourth District, Division 1, California.

UNIVERSAL PROTECTION
SERVICE, L.P., Petitioner,
v.
The SUPERIOR COURT OF SAN
DIEGO COUNTY, Respondent,
Floridalma Franco, Real Party in Interest.

D066919    |    Filed 2/27/2015
|    As Modified 3/12/2015

**Synopsis**
**Background:** After employee, on behalf of herself and other similarly situated, filed claim for arbitration against employer, stemming from employer's alleged failure to pay its security guards wages for regular and overtime hours, to provide required meal and rest breaks, to provide reimbursement for employment related expenses, and to provide itemized wage statements, employer filed action for declaratory relief. Employee petitioned to compel arbitration. The Superior Court, San Diego County, Earl H. Maas III, J., granted employee's demand to arbitrate and ruled that arbitrator would decide arbitrability of employee's class action claims. Employer filed petition for writ of mandate and prohibition.

**[Holding:]** The Court of Appeal, O'Rourke, J., held that arbitration agreement authorized arbitrator to decide threshold question of arbitrability of employee's class action claims.

Petition denied.

West Headnotes (11)

**[1]    Alternative Dispute Resolution**
    Scope and standards of review
Standard of review of an order compelling arbitration is substantial evidence, where trial court's decision was based upon resolution of

disputed facts, or de novo, where facts are not in conflict. Cal. Civ. Proc. Code § 1281.2.

Cases that cite this headnote

**[2]    Alternative Dispute Resolution**
    Evidence
Where a contract is silent on the question of who primarily is to decide threshold or gateway questions of arbitrability, courts determine the parties' intent with the help of presumptions.

Cases that cite this headnote

**[3]    Alternative Dispute Resolution**
    Evidence
Without a clear indication of intent of parties to a contract that arbitrator decide questions of arbitrability, courts presume that parties intend courts, not arbitrators, to decide disputes about arbitrability.

Cases that cite this headnote

**[4]    Alternative Dispute Resolution**
    Evidence
Whether there is clear and unmistakable evidence of intent of parties to a contract regarding who primarily is to decide threshold or gateway questions of arbitrability, courts or arbitrators, is a heightened standard of proof.

Cases that cite this headnote

**[5]    Alternative Dispute Resolution**
    Arbitrability of dispute
Contract's silence or ambiguity about arbitrator's power to decide threshold question of arbitrability cannot satisfy the clear and unmistakable evidence standard.

Cases that cite this headnote

**[6]    Alternative Dispute Resolution**
    What law governs
**Alternative Dispute Resolution**
    Evidence

Case 2:14-cv-05664-ES-MAH Document 29 Filed 05/13/15 Page 15 of 23 PageID: 470
Universal Protection Service, LP v. Superior Court of San..., 234 Cal.App.4th 1128...
184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

When deciding whether parties to a contract agreed to arbitrate a certain matter, including arbitrability, courts generally should apply ordinary state-law principles that govern the formation of contracts subject to the important qualification that courts should not assume that parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.

Cases that cite this headnote

**[7]**   **Alternative Dispute Resolution**
👉 Arbitrability of dispute

As to who decides arbitrability, courts or arbitrators, the question involved is fundamentally one of parties' contractual intent, requiring both an analysis of common understanding or ambiguity of contractual language and, critically, reasonableness as well as context in which key terms appear.

Cases that cite this headnote

**[8]**   **Alternative Dispute Resolution**
👉 Award

Reference to national arbitration organization rules in arbitration agreement between employee and employer was clear and unmistakable evidence of parties' intent that arbitrator, rather than court, interpret parties' arbitration agreement and decide whether it permitted arbitration of employee's class and representative claims, stemming from employer's alleged failure to pay its security guards wages for regular and overtime hours, to provide required meal and rest breaks, to provide reimbursement for employment related expenses, and to provide itemized wage statements, such that threshold issue of arbitrability of employee's class action claims was for arbitrator to decide; rules unambiguously stated that arbitrator was to decide whether parties' arbitration agreement permitted class arbitration. Cal. Lab. Code § 2698 et seq.

Cases that cite this headnote

**[9]**   **Alternative Dispute Resolution**
👉 Right to Enforcement and Defenses in General

Basic objective in enforcing arbitration agreements is to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties.

Cases that cite this headnote

**[10]**   **Contracts**
👉 Matters annexed or referred to as part of contract

Contract may validly include the provisions of a document not physically part of the basic contract; parties may incorporate by reference into their contract the terms of some other document.

Cases that cite this headnote

**[11]**   **Contracts**
👉 Matters annexed or referred to as part of contract

For the terms of another document to be incorporated into the document executed by the parties, reference must be clear and unequivocal, reference must be called to attention of the other party and he must consent thereto, and terms of incorporated document must be known or easily available to the contracting parties.

*See 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 506.*

Cases that cite this headnote

**\*\*384**  Petition for writ of mandate from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge. Petition denied.

Case 2:14-cv-05664-ES-MAH Document 29 Filed 05/13/15 Page 16 of 23 PageID: 471

Universal Protection Service, L.P. v. Superior Court of San..., 234 Cal.App.4th 1128...
184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

**Attorneys and Law Firms**

Sheppard, Mullin, Richter & Hampton and Richard J. Simmons, Jason Wade Kearnaghan, Cassidy M. English, Michael T. Campbell, Los Angeles, for Petitioner.

The Dion–Kindem Law Firm and Peter R. Kindem, Woodland Hills, The Blanchard Law Group and Lonnie C. Blanchard, Los Angeles, Jeffrey D. Holmes for Real Party in Interest.

**Opinion**

O'ROURKE, J.

**\*1131** Petitioner Universal Protection Service, L.P. (Universal) petitions for a writ of mandate and/or prohibition challenging the superior court's order granting real party in interest Floridalma Franco's demand to arbitrate her employment-related disputes with Universal and ruling the arbitrator would decide the arbitrability of Franco's class action claims. Universal contends the court legally erred in its ruling because the parties' arbitration agreement did not clearly and unmistakably submit arbitrability questions to the arbitrator, and thus it was for the superior court to decide whether the agreement authorized class and/or representative arbitration.

**\*1132** We conclude the court erred by granting Franco's petition in reliance on *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (*Bazzle* ). Nevertheless, we agree with Franco that the parties' reference to American Arbitration Association (AAA) rules, which unambiguously state that the arbitrator is to decide whether the parties' arbitration agreement permits class arbitration, constitutes clear and unmistakable evidence of their intent that the arbitrator decide this issue, which is a threshold question of arbitrability. Because the trial court reached the correct conclusion, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Franco, then a Universal employee, signed an arbitration agreement providing that she and Universal agreed subject to some exceptions to arbitrate "any and all disputes or claims" between them, including disputes relating to their employment relationship and its termination, and disputes over wage and hour violations (the arbitration agreement). The arbitration agreement states that the arbitration is to be conducted "in accordance with the National Rules for the Resolution of Employment Disputes set forth by the [AAA]." [1]

**\*\*385** In March 2014, Franco on behalf of herself and others similarly situated filed a claim for arbitration with the AAA setting out 11 causes of action based on Universal's alleged violations of the Labor Code and wage orders for not paying its security guards wages for regular and overtime hours, not providing required meal and rest breaks, not reimbursing for employment related expenses, and not providing itemized wage statements. In part, Franco **\*1133** sought to recover civil penalties under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

Universal responded to Franco's demand by filing a declaratory relief action in the San Diego Superior Court. It sought judicial declarations that (1) the court, not an arbitrator, decide whether class, collective or other representative arbitration is available under the arbitration agreement and (2) the arbitration agreement required Franco to arbitrate her claims on an individual basis only.

Franco petitioned to compel arbitration. She pointed out that AAA rules and supplementary rules empowered the arbitrator to determine the issues of arbitrability and his or her own jurisdiction, as well as rule on objections as to the scope of the arbitration agreement. Franco maintained that the parties' designation of those rules in the arbitration agreement demonstrated they agreed the arbitrability of Franco's class and PAGA claims was an issue for the arbitrator, precluding the court from deciding those issues. The motion was supported by the declaration of Franco's counsel, who averred in part that based on those rules, the parties "clearly agreed that the issue of the arbitrability of Plaintiff's class claims as well as the arbitrability of the PAGA claims is an issue for the arbitrator to decide." [2]

In opposition, Universal argued Franco had conceded that the superior court was to determine the " 'gateway question' " of whether Franco's claims could proceed on a class and/or representative basis in arbitration. (Italics omitted.) Relying in part on **\*\*386** *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491, and *Stolt–Nielsen SA v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (*Stolt–Nielsen* ), Universal argued she had not provided evidence the parties had clearly and unmistakably agreed to submit that threshold issue to an arbitrator; that the choice to use AAA rules was

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

not evidence of an agreement to delegate class arbitrability questions to the arbitrator, and courts had rejected such an argument. Universal further argued the parties' arbitration agreement was strictly limited to claims between it and Franco, making no reference to class arbitration, and thus the court could only order the parties to individual arbitration. Finally, Universal argued that under **\*1134** *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129, Franco's PAGA claim was not arbitrable.

Following a short hearing on the matter, the court granted Franco's petition to compel arbitration. Citing *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297, 9 Cal.Rptr.3d 190 (*Garcia* ), it ruled that "[t]he arbitrator shall decide the issue of whether the class action claims are arbitrable."

Universal filed this petition for writ of mandate or prohibition seeking an immediate stay and requesting that this court issue an alternative writ directing the superior court to vacate its order, or show cause why it should not be ordered to do so, and on return of that writ issue a peremptory writ of mandate directing the court to enter a new order denying Franco's motion to compel arbitration.

We issued an order to show cause, stayed the trial court's order and the parties' arbitration, and deemed, absent objection, Franco's informal response a return to the petition. We now deny the petition.

### DISCUSSION

#### I. *Standard of Review*

Code of Civil Procedure section 1281.2, governing petitions to compel arbitration, provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement."

[1] "The standard of review of an order compelling arbitration is substantial evidence, where the trial court's decision was based upon the resolution of disputed facts, or

de novo where the facts are not in conflict." (*Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1360, 95 Cal.Rptr.3d 252, citing *Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 22 Cal.Rptr.3d 410.) The trial court here did not resolve factual disputes, but based its decision on what it believed to be controlling U.S. Supreme Court authority. Furthermore, the parties did not present conflicting evidence, but based their arguments strictly on the language of arbitration agreement and the referenced AAA rules, the language of which is **\*1135** not in dispute. Under these circumstances, we determine the correctness of the court's decision, a legal question, de novo. (Accord, *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425, 34 Cal.Rptr.3d 547 [appellate court employs de novo standard of review where court's ruling on motion to compel arbitration rests on a **\*\*387** decision of law]; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707, 111 Cal.Rptr.3d 876 [de novo standard applies to order on petition to compel arbitration where there is no factual dispute as to the agreement's language or conflicting evidence to aid its interpretation].)

#### II. *The Superior Court Erred by Granting Franco's Motion to Compel Arbitration In Reliance on* **Garcia** *and* **Bazzle**

Here, the superior court granted Franco's motion to compel arbitration based solely on *Garcia, supra,* 115 Cal.App.4th 297, 9 Cal.Rptr.3d 190, which in turn held "[t]he Supreme Court ha[d] spoken" in *Bazzle, supra,* 539 U.S. 444, 123 S.Ct. 2402 and "quite plainly mandates" that the arbitrator must decide in the first instance whether a particular arbitration agreement prohibits or permits class arbitrations. (*Garcia,* at pp. 298, 302, 9 Cal.Rptr.3d 190.)

This court and others have declined to rely on *Bazzle* as the conclusive answer to that question. The Supreme Court's decisions in *Stolt–Nielsen, supra,* 559 U.S. at p. 680, 130 S.Ct. 1758 and *Oxford Health Plans LLC v. Sutter* (2013) ——— U.S. ———, 133 S.Ct. 2064, 2068, fn. 2, 186 L.Ed.2d 113 point out that *Bazzle* is a nonbinding plurality opinion, casting doubt on whether it should be accorded any deference. (See *Garden Fresh Restaurant Corporation v. Superior Court* (2014) 231 Cal.App.4th 678, 685, 180 Cal.Rptr.3d 89 (*Garden Fresh* ) [U.S. Supreme Court has not yet decided whether availability of class arbitration is a question for the court or for an arbitrator to decide]; *Truly Nolen of*

Case 2:14-cv-05664-ES-MAH Document 29 Filed 05/13/15 Page 18 of 23 PageID: 473

Universal Protection Service, L.P. v. Superior Court of San..., 234 Cal.App.4th 1128...

184 Cal.Rptr.3d 382, 382 (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

*America v. Superior Court* (2012) 208 Cal.App.4th 487, 515, fn. 4, 145 Cal.Rptr.3d 432 [*Bazzle* was a nonbinding plurality decision on the point]; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129, fn. 6, 144 Cal.Rptr.3d 198.) We conclude that reliance on *Garcia, supra,* 115 Cal.App.4th 297, 9 Cal.Rptr.3d 190 and *Bazzle, supra,* 539 U.S. 444, 123 S.Ct. 2402 as the basis for granting Franco's petition to compel arbitration was error.

This conclusion, however, does not end the inquiry, as we review the correctness of the court's order, not its reasoning. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336, 113 Cal.Rptr.3d 279, 235 P.3d 947; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19, 112 Cal.Rptr. 786, 520 P.2d 10; *Town v. Atherton v. California High–Speed Rail Authority* (2014) 228 Cal.App.4th 314, 354, 175 Cal.Rptr.3d 145.) Here, Universal's action sought judicial declarations as to two matters. **\*1136** The first was that the court declare that it, and not the arbitrator, had the power to decide the availability of class and/or representative arbitration. This court has now squarely held that this particular "who decides" question is a gateway question of arbitrability "for a court to decide, *in the absence of a clear indication that the parties intended otherwise.*" (*Garden Fresh, supra,* 231 Cal.App.4th at p. 686, 180 Cal.Rptr.3d 89, italics added.) [3]

**[2]** **[3]** **\*\*388** In *Garden Fresh,* there was no dispute the parties' arbitration contracts were silent on that particular question. (*Garden Fresh, supra,* 231 Cal.App.4th at p. 682, 180 Cal.Rptr.3d 89.) Where a contract is silent on the question of who primarily is to decide such threshold or gateway questions, "courts determine the parties' intent with the help of presumptions." (*BG Group, PLC v. Republic of Argentina* (2014) ––––U.S. ––––, 134 S.Ct. 1198, 1206, 188 L.Ed.2d 220.) Without a clear indication of the parties' intent that the arbitrator decide questions of arbitrability, "courts presume that the parties intend courts, not arbitrators, to decide ... disputes about 'arbitrability.' " (*Ibid;* see also *Oxford Health Plans LLC v. Sutter, supra,* –––– U.S. ––––, 133 S.Ct. 2064, 2068, fn. 2 [gateway questions of arbitrability are "presumptively for courts to decide" absent " 'clear[ ] and unmistabl[e]' evidence that the parties wanted an arbitrator to resolve the dispute"]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (*First Options* ); *Garden Fresh,* at pp. 684–685, 180 Cal.Rptr.3d 89.)

**[4]** **[5]** Whether there is clear and unmistakable evidence of the parties' intent is a *heightened* standard of proof. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 784, 137 Cal.Rptr.3d 773, citing *Rent–A–Center, W., Inc. v. Jackson* (2010) 561 U.S. 63, 70, fn. 1, 130 S.Ct. 2772, 177 L.Ed.2d 403.) Accordingly, "a contract's silence or ambiguity about the arbitrator's power [to decide a threshold question of arbitrability] cannot satisfy the clear and unmistakable evidence standard." (*Ajamian v. CantorCO2e, L.P.,* at p. 782, 137 Cal.Rptr.3d 773, citing *First Options, supra,* 514 U.S. at pp. 943–945, 115 S.Ct. 1920.) The reason for this standard is that the issue of who should decide arbitrability "is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. [Citations.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving arbitrators that power, for **\*1137** doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*First Options,* at p. 945, 115 S.Ct. 1920.)

**[6]** **[7]** "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts" subject to the "important qualification" that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (*First Options, supra,* 514 U.S. at p. 944, 115 S.Ct. 1920.) Thus, as to "who decides" arbitrability, the question involved is fundamentally one of the parties' contractual intent, requiring both an analysis of the common understanding or ambiguity of the contractual language and, critically, reasonableness as well as the context in which the key terms appear. (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263; **\*\*389** *Mount Vernon Fire Insurance Corporation v. Oxnard Hospitality Enterprise, Inc.* (2013) 219 Cal.App.4th 876, 882, 162 Cal.Rptr.3d 211.)

***III. The Parties' Consent to AAA Rules Is a Clear and Unmistakable Agreement That the Arbitrator Decides Arbitrability of Class and/or PAGA Claims***

Westlaw Next © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-05664-ES-MAH   Document 29   Filed 05/13/15   Page 19 of 23 PageID: 474

Universal Protection Service, L.P. v. Superior Court of San..., 234 Cal.App.4th 1128...

184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

**[8]**  In its writ petition, Universal argues the arbitration agreement "makes no reference to who decides any threshold issues of arbitrability and makes no reference to class or representative arbitration." Universal compares the arbitration agreement's language to that in a case now on review before the California Supreme Court and no longer citable as precedent (see footnote 3, *ante* ). Though we agree the arbitration clause in this case—providing the parties agree that "any and all disputes or claims between [Universal] and [Franco] ... shall be resolved by arbitration"—does not expressly use the phrases class action or representative claims, this does not mean the arbitration agreement is without a clear and unmistakable indication of the parties' intent. (See *Yahoo! Inc. v. Iversen* (N.D.Cal. 2011) 836 F.Supp.2d 1007, 1011, quoting *Stolt–Nielsen, supra,* 559 U.S. at pp. 669, 673, 130 S.Ct. 1758 & *Vazquez v. ServiceMaster Global Holding Inc.* (N.D.Cal., June 29, 2011, No.09–cv–05148–SI) 2011 WL 2565574, fn 1 [Supreme Court has never held that the parties must explicitly mention that they agree to class arbitration in order for a decisionmaker to conclude the parties consented to class arbitration]; *Parvataneni v. E*Trade Financial Corporation* (N.D.Cal. 2013) 967 F.Supp.2d 1298, 1303.)

Franco's argument below, which Universal does not address in its writ petition, is that by referring to AAA rules in the arbitration agreement, the parties have clearly and unmistakably agreed that the arbitrator, not the court,  **\*1138** should decide whether the parties agreed to class and/or representative arbitration. In her informal response, Franco argues she presented "unmistakabl[e]" evidence the parties agreed the arbitrator would decide the issue because they incorporated the AAA rules, including specific AAA rules for class action arbitrations, into their agreement.

On this record, where the sole evidence of the parties' intent is the arbitration agreement and the relevant AAA rules, which were exhibits to the moving papers below, [4] we conclude Franco's argument has merit. As indicated, the parties' arbitration agreement unambiguously states that disputes "shall be resolved by arbitration before a neutral arbitrator in accordance with the National Rules of the Resolution of Employment Disputes set forth by the [AAA]." Paragraphs 3 and 6 of the AAA Employment Arbitration Rules and Mediation Procedures (AAA Employment Rules) respectively authorize the AAA to administer the arbitration and prescribe the arbitrator's power: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope, or validity of the arbitration agreement."

But more specifically, an agreement to the AAA's Employment Rules necessarily includes an agreement to the AAA Supplementary Rules for Class Arbitrations (the **\*\*390** Class Arbitration Rules). The Class Arbitration Rules provide, in part: "These Supplementary Rules for Class Arbitrations ... shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class." (Class Arbitration Rules, rule 1(a).)

The Class Arbitration Rules expressly state that the arbitrator shall engage in "construction" of the arbitration clause as to whether it permits the arbitration to proceed on behalf of or against a class: "Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award'). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of **\*1139**  at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award." (Class Arbitration Rules, rule 3.) That rule further states: "In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." (Class Arbitration Rules, rule 3.)

**[9]**  We hold under the circumstances of this case and on this record, that the parties' agreement to arbitrate their disputes under a specifically designated set of rules, which in turn provide that the arbitrator shall decide whether the parties' arbitration agreement permits class and/or representative arbitration, is clear and unmistakable evidence that the parties intended to delegate to the arbitrator that question. (Accord, *Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1256–1257, 127 Cal.Rptr.3d 174 [addressing incorporation of a private arbitration service's rules: "Ordinarily, the parties'

Case 2:14-cv-05664-ES-MAH Document 29 Filed 05/13/15 Page 20 of 23 PageID: 475

Universal Protection Service, LP v. Superior Court, 234 Cal.App.4th 1128...

184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

agreement to arbitrate in accordance with [rules giving the arbitrator authority to determine jurisdiction and arbitrability issues] 'is clear and unmistakable evidence of the intent that the arbitrator will decide whether a [c]ontested [c]laim is arbitrable' "]; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1442, 111 Cal.Rptr.3d 468; see also *Yahoo! Inc. v. Iversen, supra,* 836 F.Supp.2d at p. 1012 [incorporation by reference of the AAA Supplementary Rules as they existed at the time Yahoo! Inc. and Iversen entered into their contract constitutes a "clear[ ] and unmistakabl[e]" agreement to have the arbitrator decide questions regarding the arbitrability of classwide claims].) This conclusion upholds the federal policy served by the FAA, which is " 'at bottom a policy guaranteeing the enforcement of private contractual arrangements.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1353, 82 Cal.Rptr.3d 229, 190 P.3d 586, quoting *Mitsubishi Motors v. Soler Chrysler–Plymouth* (1985) 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 & *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 58, 115 S.Ct. 1212, 131 L.Ed.2d 76.) " '[T]he basic objective in this area is ... to ensure that commercial arbitration agreements, like other contracts, " 'are enforced according to their terms,' " [citations], and according to the intentions of the parties.' " (  **\*391** *Cable Connection,* at p. 1353, 82 Cal.Rptr.3d 229, 190 P.3d 586, quoting *First Options, supra,* 514 U.S. at p. 947, 115 S.Ct. 1920; see also *AT & T Mobility LLC v. Concepcion* (2011) ––––U.S. ––––, 131 S.Ct. 1740, 1745–1746, 179 L.Ed.2d 742 ["courts must place arbitration agreements on an equal footing with other contracts [citation] and enforce them according to their terms"]; *Garden Fresh, supra,* 231 Cal.App.4th at p. 684, 180 Cal.Rptr.3d 89.)

  **[10]**    **[11]**  This conclusion is also consistent with general contract principles. "A contract may validly include the provisions of a document not physically part of the basic contract.... 'It is, of course, the law that the parties may **\*1140** incorporate by reference into their contract the terms of some other document. [Citations.] But each case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.' " (*Williams Constr. Co. v. Standard–Pacific Corp.* (1967) 254 Cal.App.2d 442, 454, 61 Cal.Rptr. 912; see *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 66, 159 Cal.Rptr.3d 444;

*Baker v. Osborne Development Corporation* (2008) 159 Cal.App.4th 884, 895, 71 Cal.Rptr.3d 854; *King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 353–357, 175 Cal.Rptr. 226 [court held incorporated realtor association bylaws, which required members to arbitrate disputes and arbitration manual, reflected parties' agreement to arbitrate disputes as set forth in the arbitration manual].) Franco has not argued, nor can Universal as the drafter of the arbitration agreement, that the content of the referenced AAA rules were unknown or not readily available at the time Universal and Franco contracted.

We recognize there are conflicting California authorities on this question in differing contexts. This court's decision in *Hartley v. Superior Court, supra,* 196 Cal.App.4th 1249, 127 Cal.Rptr.3d 174, involved a purchase agreement's provision that arbitration would be conducted in accordance with certain private judicial arbitration and mediation rules, which stated the arbitrator had authority to determine jurisdiction and arbitrability issues as a preliminary matter. (*Id.* at p. 1257, 127 Cal.Rptr.3d 174.) Citing *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 557, 21 Cal.Rptr.3d 322 (*Dream Theater* ), we acknowledged the general rule that an agreement to arbitrate in accordance with such a rule constitutes clear and unmistakable evidence of the parties' intent that the arbitrator will decide the arbitrability of a contested claim. (*Hartley v. Superior Court,* at pp. 1256–1257, 127 Cal.Rptr.3d 174.) In that case, however, the parties' purchase agreement contained additional ambiguities; we concluded it was not clear and unmistakable because elsewhere it referred to a "trier of fact of competent jurisdiction" and not an "arbitrator," and thus it did not meet the "heightened standard" to vary from the general rule that the court would decide such gateway issues. (*Id.* at pp. 1257–1258, 127 Cal.Rptr.3d 174.) In *Greenspan v. LADT, LLC, supra,* 185 Cal.App.4th 1413, 111 Cal.Rptr.3d 468, the Court of Appeal held that " 'when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.' " (*Id.* at p. 1442, 111 Cal.Rptr.3d 468; see also  **\*392** *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1193, 94 Cal.Rptr.3d 918 [observing that California cases hold that incorporation of AAA rules by reference was "sufficient to 'clearly and unmistakably' provide that arbitrators would have jurisdiction to decide their own jurisdiction," and finding those cases to "represent the outer limits" of  **\*1141** incorporation by reference but declining to apply it in that

Case 2:14-cv-05664-ES-MAH   Document 29   Filed 05/13/15   Page 21 of 23 PageID: 476

Universal Protection Service, L.P. v. Superior Court of San..., 15 Cal.App.4th 1128...

184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

case where the AAA rule was not in existence at the time of contracting]; *Dream Theater, supra,* 124 Cal.App.4th at pp. 550, 557, 21 Cal.Rptr.3d 322 [parties agreed to conduct arbitration in accordance with AAA commercial rules, which provided the arbitrator would have power to rule on his own jurisdiction, including objections as to the scope of the agreement; "It is difficult to imagine how parties could state any more comprehensively ... the intent to avoid litigation at every step of the dispute resolution process.... [The AAA commercial rules] specify that the arbitrator will decide disputes over the scope of the arbitration agreement. We conclude that the parties' agreement to arbitrate according to this rule is clear and unmistakable evidence of the intent that the arbitrator will decide whether a Contested Claim is arbitrable."].)

On the other hand, in *Ajamian v. CantorCO2e, L.P., supra,* 203 Cal.App.4th 771, 137 Cal.Rptr.3d 773, the Court of Appeal "seriously question [ed]" whether the incorporation of AAA rules into an agreement provided clear and unmistakable evidence that an employer and employee intended to submit the issue of unconscionability of an arbitration provision to the arbitrator. (*Ajamian,* at p. 790, 137 Cal.Rptr.3d 773.) But the observation was dicta; the *Ajamian* court expressly did not decide that question because there was a different reason in that case to conclude the parties had not so intended: the employment agreement at issue "did not mandate that AAA rules would *necessarily* apply. Instead, the arbitration clause stated that the arbitration would be held according to [the National Association of Securities Dealers] rules, AAA rules, *or* the rules of 'any other alternative dispute resolution organization' selected by [defendant] in its sole discretion." (*Ajamian,* at p. 791, 137 Cal.Rptr.3d 773.) Furthermore, in that case, other provisions in the employment agreement suggested that the *court* (as opposed to the arbitrator) might find contractual provisions unenforceable, creating additional ambiguity. (*Id.* at pp. 791–792, 137 Cal.Rptr.3d 773.) Because the parties' arbitration agreement in this case does not have these flaws, *Ajamian* is inapposite.

There is conflicting federal authority on the issue as well. In *Reed Elsevier, Inc. v. Crockett* (6th Cir. 2013) 734 F.3d 594, the federal Sixth Circuit Court of Appeals held that language of an arbitration clause providing for resolution under AAA commercial rules did not clearly and unmistakably assign to an arbitrator the question of whether the agreement

permitted classwide arbitration. (*Id.* at p. 599.) The court focused on the fact that the agreement "does not mention classwide arbitration at all," holding it was, at best, silent or ambiguous on the issue, which was not enough to overcome the presumption that the issue should be decided by the court. (*Id.*) The court then proceeded to answer a *different* question from the "who decides" question—whether the parties' arbitration clause indeed authorized classwide arbitration—and held it did not, because the clause limited arbitration to claims "arising from or in connection with *this Order*" as opposed to other customer orders. (*Ibid.*) It rejected the customer's argument that incorporation **\*1142** of the AAA Supplemental Rules for Class Arbitration demonstrated otherwise, pointing out that they state "one should 'not consider the existence of these Supplementary Rules, **\*\*393** or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.' " (*Id.* at pp. 599–600.) But this point is different from the "who decides" question. In any event, we disagree with *Reed Elsevier*'s suggestion that the parties must expressly use the words "class arbitration" in their agreement in order to express an intent that an arbitrator (versus the court) decide whether the agreement permits it. [5]

In sum, Franco and Universal's agreement to resolve their arbitration under the AAA rules constitutes clear and unmistakable evidence of their intent that the arbitrator, not the court, interpret the arbitration agreement and decide whether it permits arbitration of class and/or representative claims. Accordingly, we deny Universal's petition.

## *1143 DISPOSITION

The petition is denied. The stay issued on November 10, 2014, is vacated. Floridalma Franco shall recover her costs.

WE CONCUR:

NARES, Acting P.J.

McINTYRE, J.

### Parallel Citations

234 Cal.App.4th 1128, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143, 2015 Daily Journal D.A.R. 2392

---

Universal Protection Service, LP v. Superior Court of San..., 239 Cal.App.4th 1128...

Case 2:14-cv-05664-ES-MAH   Document 29   Filed 05/13/15   Page 22 of 23 PageID: 477

184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

Footnotes

1    More fully, the relevant provision states: "Subject only to the exceptions set forth below, any and all disputes or claims between Universal ... ('the Company') and ... Franco ('Employee'), (collectively referred to as 'the parties') shall be resolved by arbitration before a neutral arbitrator in accordance with the National Rules for the Resolution of Employment Disputes set forth by the [AAA]. This shall include any and all disputes (except as expressly set forth below) related to the employment relationship between the Company and Employee and/or termination of that relationship including, but not limited to, claims for alleged discrimination, harassment, defamation, invasion of privacy, termination or discrimination in alleged violation of public policy, violation of the Fair Employment and Housing Act, violation of Title VII of the Civil Rights Act, whistleblower claims, alleged wage and hour violations, etc. [¶] ... [¶] The following claims only are not intended to be included in this arbitration provision: (a) Claims subject to the exclusive remedy under the Workers' Compensation Act; (b) unemployment claims; (c) claims subject to exclusive determination under the Employees Retirement Income Security Act (ERISA). [¶] ... [¶] If an [sic] term or provision of this Agreement is determined to be illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable or invalid provision or part thereof shall be stricken from this Agreement, and such provision shall not affect the legality, enforceability or validity of the remainder of this Agreement."

2    Franco's counsel also explained that he had initially brought an action against Universal on Franco's behalf in the Orange County Superior Court because he was unaware that she had signed an arbitration agreement, and that Universal then petitioned to compel arbitration in that action. He dismissed the Orange County action and filed Franco's claim with the AAA, during which Universal took the position that the AAA could not determine the arbitrability of the class and PAGA claims. Universal then filed the present action for declaratory relief.

3    The question presented here is whether the parties' reference to AAA rules, including rules that expressly state the arbitrator "shall determine as a threshold matter ... whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class," constitutes clear and unmistakable evidence that they agreed the arbitrator is to decide that question. Different but related issues are pending before the Supreme Court in *Sandquist v. Lebo Automotive, Inc.* (2014) 228 Cal.App.4th 65, 174 Cal.Rptr.3d 672, review granted November 12, 2014, No. S220812, and *Network Capital Funding Corporation v. Papke* (2014) 230 Cal.App.4th 503, 178 Cal.Rptr.3d 658, review granted January 14, 2015, No. S222638.

4    Franco's counsel attached both the AAA Employment Rules and the Class Arbitration Rules as exhibits to his declaration. Universal had also attached the AAA Employment Rules to its counsel's declaration in the Orange County action. Neither party points out any distinction between the National Rules of the Resolution of Employment Disputes and the AAA Employment Arbitration Rules and Mediation Procedures.

5    The weight of federal authority supports our holding. "California courts often look to federal law when deciding arbitration issues under state law." (*Dream Theater, supra,* 124 Cal.App.4th at p. 553, 21 Cal.Rptr.3d 322.) The Ninth Circuit has observed that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (*Oracle America, Inc. v. Myriad Group A.G.* (9th Cir. 2013) 724 F.3d 1069, 1074 [but limiting its own holding pertaining to incorporation of UNCITRAL rules to arbitration agreements "between sophisticated parties to commercial contracts"], citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.* (5th Cir. 2012) 687 F.3d 671, 675 ["[T]he express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."]; *Fallo v. High–Tech Inst.* (8th Cir. 2009) 559 F.3d 874, 878 [AAA commercial rule 7(a) gave the arbitrator the power to determine arbitrability]; *Qualcomm Inc. v. Nokia Corp.* (Fed. Cir. 2006) 466 F.3d 1366, 1373; *Terminix Int'l Co. v. Palmer Ranch LP* (11th Cir. 2005) 432 F.3d 1327, 1332; *Contec Corp. v. Remote Solution Co., Ltd.* (2d Cir. 2005) 398 F.3d 205, 208; see also *In re: Cathode Ray Tube (CRT) Antitrust Litigation* (N.D.Cal., Dec. 18, 2014, Nos.C–07–5944–S.C., 3:14–cv–02510) 2014 WL 7206620 [pointing to "substantial weight of authority finding that incorporating AAA or other arbitration rules constitutes 'clear and unmistakable' evidence of intent to resolve arbitrability before the arbitral panel"]; *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.* (2d Cir. 2010) 592 F.3d 329, 345 [when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"]; but see *Tompkins v. 23andMe, Inc.* (N.D.Cal., June 25, 2014, Nos. 5:13–CV–05682–LHK, 5:14–CV–00294–LHK, 5:14–CV–00429–LHK, 5:14–CV–01167–LHK, 5:14–CV–01191–LHK, 5:14–CV–01258–LHK, 5:14–CV–01348–LHK, 5:14–CV–01455–LHK) (2014 WL 2903752) [declining to hold that unspecific reference to AAA rules indicated the parties' intent because there were "multiple layers of ambiguity" about which AAA rules governed, and uncertainty as to whether consumer rules applied in addition to the commercial rules].) District courts have held that " 'consent to any of the AAA's substantive rules also constitutes consent to the

Universal Protection Service, LP v. Superior Court of Gan..., 239 Cal.App.4th 1128...
184 Cal.Rptr.3d 382, 2015 L.R.R.M. (BNA) 177,356, 15 Cal. Daily Op. Serv. 2143...

Supplementary Rules [for Class Arbitrations] and, if a dispute that otherwise would be arbitrated under the AAA rules involves a purported class, then the proceeding is governed by both the AAA rules and the AAA Supplementary Rules for Class Arbitrations.' " (*Marriott Ownership Resorts, Inc. v. Flynn* (D.Hawaii, Dec. 11, 2014, Civ. No. 14–00372) 2014 WL 7076827 [citing cases]; see also *Chesapeake Appalachia, LLC v. Burkett* (M.D.Pa., Oct. 17, 2014, Civ. A. No. 3:13–3073) 2014 WL 5312829.)

---

**End of Document**                                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.